UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY L. KRETCHMAR, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FEDERAL BUREAU OF ) <br> INVESTIGATION, *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 12-1551 (KBJ) |

## **MEMORANDUM OPINION**

Plaintiff Gary Kretchmar ("Plaintiff" or "Kretchmar") is serving a life sentence following his 1988 conviction in Pennsylvania state court for first-degree murder. (Compl., ECF No. 1, ¶ 17.) At his trial, a Federal Bureau of Investigation ("FBI") Special Agent testified about a forensic technique known as "Comparative Bullet Lead Analysis" ("CBLA") that the FBI laboratory conducted on certain evidence that investigators recovered from the murder scene. (*Id.* ¶¶ 15-16.) Shortly after Kretchmar's conviction, there was widespread public criticism of the scientific work of thirteen FBI laboratory examiners, and as a result, the FBI issued a memorandum recommending that the forensic work of these particular examiners be reviewed under certain specified circumstances. (*Id.* ¶¶ 20-21.) That FBI memorandum forms the basis of Kretchmar's lawsuit, which he filed *pro se* in September 2012, against the FBI, the FBI Laboratory Division, and the Director of the FBI Laboratory Division (collectively, "Defendants"). Kretchmar's complaint here alleges that

Defendants deprived him of his Fifth Amendment due process rights (Count I), and violated the Administrative Procedure Act, 5 U.S.C. § 702 ("APA") (Count II), when the agency proceeded to review the forensic testimony that its agent had provided during Kretchmar's murder trial—review that was done as part of a broader program to ensure that witnesses had not provided misleading CBLA-related testimony (the "Bullet Lead Transcript Review")—but, according to Kretchmar, did not follow the FBI memorandum's specific guidance in conducting that review. (Compl. ¶¶ 22-26, 36, 46.)[1]

Before this Court at present is Defendants' motion to dismiss or, in the alternative, motion for summary judgment, which argues that Kretchmar cannot maintain a claim under either the Due Process Clause or the APA based on Defendants' alleged non-adherence to the FBI memorandum's recommendations. (*See* Mem. in Supp. of Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mot."), ECF No. 16; Suppl. Br. in Support of Defs.' Mot. to Dismiss or in the Alternative, for Summ. J. on Counts I & II, ECF No. 39 ("Defs.' Suppl. Br.").) Because Kretchmar cannot establish that Defendants deprived him of due process, nor can he claim any injury under the APA, the Court will **GRANT** Defendants' motion and **DISMISS** Kretchmar's case in its entirety. A separate order consistent with this opinion will follow.

---

[1] Kretchmar also initially asserted a claim under the Privacy Act, 5 U.S.C. § 552a, as Count III of the complaint, but he has conceded that this claim should be dismissed. (*See* Pl.'s Mot. in Opp'n to Def.'s Mot. to Dismiss or in the Alternative for Summ. J., ECF No. 23 ("Pl.'s Opp'n"), at 13.)

## I. FACTUAL BACKGROUND

In 1998, Kretchmar stood trial for first degree murder in Pennsylvania state court. (*See* Compl. ¶¶ 13, 15.) The prosecutor in Kretchmar's case asked the FBI to conduct forensic analysis, including CBLA, on certain pieces of crime scene evidence. (*Id.* ¶ 14.) FBI Special Agent John Riley, who was a member of the FBI's crime lab, testified at trial about the results of the CBLA. (*Id.* ¶¶ 15-16.) *See also Kretchmar v. Penn.*, 971 A.2d 1249, 1252, 1256-57 (Pa. 2009) (recounting Special Agent Riley's CBLA testimony). The jury convicted Kretchmar, and the Pennsylvania court sentenced him to a term of life imprisonment. (Compl. ¶ 17.)

On May 17, 1999, the Civil Discovery Review Unit ("CDRU") of the FBI's Office of General Counsel ("OIG") issued a memorandum naming thirteen lab examiners whose scientific work OIG had criticized in a report dated April 15, 1997. (Pl.'s Opp'n, App. A ("CDRU Memo"), ECF No. 23, at 1-2.)[2] The CDRU Memo stated that "[t]he allegations and criticisms concerning these individuals var[y] greatly and in some instances [are] case specific." (*Id.* at 1.) The CDRU Memo directed that "this document" be placed "in every investigative file containing forensic work performed by any of [the named examiners]." (*Id.*) In addition, the memorandum stated that "[i]f the forensic work contained in this file is used in any way in the future, both the OIG's findings and the forensic analysis of the [named] examiners should be reviewed" and "legal advice should be obtained as to the FBI's disclosure obligations."

---

[2] Special Agent John Riley was not one of the lab examiners who was named in the CDRU Memo.

(*Id.*)  The FBI placed a copy of the CDRU Memo at the top of Kretchmar's FBI Laboratory file.  (Pl.'s Opp'n at 2.)[3]

Five years after the CDRU Memo issued, "a study published by the National Research Council of the National Academies ('NAS') assessed the reliability of the science of CBLA and its usefulness as a forensic evidentiary tool and [ ] raise[d] questions as to the usefulness of CBLA evidence." *Kretchmar v. FBI*, 882 F. Supp. 2d 52, 54-55 (D.D.C. 2012) (alteration in the original) (internal quotation marks and citation omitted).  Thereafter, in 2007 and 2008, Kretchmar submitted two separate FOIA requests to the FBI, the first of which sought "release of [Kretchmar's] bullet-lead case file"; and the second of which requested "release of an April 15, 1997, Office of the Inspector General Report" that criticized the forensic work performed by certain lab examiners.  *Id.* at 55.

Then, in 2009, as part of a broader CBLA review program that the FBI conducted in conjunction with the Innocence Project, the FBI and the Department of Justice reviewed the transcript of the CBLA-related testimony that Agent Riley had provided in Kretchmar's state murder case.  (*See* Compl. ¶¶ 22-25.)  *See also* FBI Press Release, FBI Laboratory to Increase Outreach in Bullet Lead Cases (Nov. 17, 2007) (describing plan to review transcripts of proceedings "to determine whether the [CBLA] testimony was consistent with the findings of the FBI Laboratory in 2005, particularly concerning the inability

---

[3] It is not clear why the FBI placed the memorandum in Kretchmar's file. (*See* CDRU Memo at 1-2.)  Because the Court must construe all facts in the light most favorable to Kretchmar in deciding this motion to dismiss, it will assume that at least one of the named examiners worked on the CBLA-related evaluation of the evidence for Kretchmar's trial.

4

of scientists and manufacturers to definitively evaluate the significance of an association between bullets . . . in the course of a bullet lead examination.").[4]

On July 17, 2009, at the conclusion of Kretchmar's transcript review, the director of the FBI Laboratory sent a letter to the office that had prosecuted Kretchmar (the Buck's County Pennsylvania District Attorney's Office) informing it that the FBI had completed its review of the transcript from Kretchmar's trial. (Compl. ¶¶ 27-28; *see also* Ex. D. to Decl. of David M. Hardy ("Hardy Decl."), ECF No. 16-2 ("Transcript Review Letter").) The letter explained that the "goal of the review was to determine if there was a suggestion by the examiner that a bullet fragment or shot pellet was linked to a single box of ammunition without clarification that there would be a large number of other bullets or boxes of bullets that could also match those fragments or shot pellet" because any such suggestion was not supported by science and would be "potentially misleading." (Transcript Review Letter at 1.) The letter explained that the testimony in Kretchmar's case had been reviewed in light of that goal, and stated that "it is the opinion of the FBI Laboratory that the examiner properly testified to the results of [the CBLA] examination." (*Id.*)[5]

Thereafter, in response to Kretchmar's outstanding FOIA requests, the FBI released to him (1) a copy of the 1999 CDRU Memo, (2) a copy of the 2009 Transcript Review Letter that the FBI Laboratory had sent to the Pennsylvania

---

[4] Available at http://www.fbi.gov/news/pressrel/press-releases/fbi-laboratory-to-increase-outreach-in-bullet-lead-cases

[5] When the state sentencing court denied Kretchmar's post-conviction motion in 2009, it also concluded, based on a factually developed record, "that the CBLA testimony offered in [Plaintiff's] trial was not misrepresentative." *Kretchmar*, 971 A.2d at 1256.

5

prosecutor, and (3) copies of various working papers associated with the FBI's transcript review.  (Pl.'s Opp'n at 4-5.)  *See also Kretchmar* 882 F. Supp. 2d at 55 (explaining that the working papers were materials that three FBI reviewers had used to evaluate the trial testimony in Kretchmar's case, including "copies of the transcript from plaintiff's state criminal trial").  Upon receiving and reviewing these materials, Kretchmar requested that the FBI amend the Transcript Review Letter and the related working papers because, in his view, those documents were "not accurate or complete, because the FBI Laboratory Bullet Lead Transcript Review agency action did not include a *mandatory review* of the April 15, 1997 OIG Report findings and/or the forensic analysis of the Laboratory Examiner(s) who analyzed the evidence contained in" his file.  (Ex. A. to Hardy Decl., ECF No. 16-2, at 2-3 (emphasis in original).)  The FBI denied Kretchmar's request (Compl. ¶¶ 52-53), and this lawsuit followed.

As noted above, Kretchmar alleges in the complaint that Defendants violated the Due Process Clause and the APA by failing to (1) evaluate the impact of the 1997 OIG findings as discussed in the CDRU Memo on the forensic testimony presented in his case, or (2) "review the forensic analysis contained in [plaintiff's] Laboratory file[.]"  (Pl.'s Opp'n at 18-20.)  Significantly, Kretchmar maintains that these actions were required pursuant to "the May 17, 1999 CDRU intra-agency memorandum."  (Compl. ¶ 34.)  In their motion to dismiss, or in the alternative, motion for summary judgment, Defendants maintain that Kretchmar's due process claim fails to state a claim upon which relief can be granted because he has failed to identify any life,

6

liberty, or property interest that Kretchmar was deprived of when the agency did not review the forensic analysis in his file and the 1997 OIG findings addressed in the CDRU Memo, nor does he state any facts to support his claim that Defendants had any obligation to conduct such a review.  (Defs.' Suppl. Br. at 7-8.)  Defendants further argue that Kretchmar's APA claim fails because he has not identified any injury-in-fact that he suffered as a result of Defendants' actions.  (*Id.* at 9-10.)  In opposition to the motion, Kretchmar argues that he has "a right, or right of expectation" under the Due Process Clause that Defendants would follow the guidance in the CDRU Memo when reviewing the transcript and evidence from his trial, and that he "has identified the loss of a liberty interest due to a procedurally deficient [Bullet Lead Transcript Review] administrative decision."  (Pl.'s Suppl. Br. in Opp'n to Ds.' Mot. to Dismiss or, In The Alternative, for Summ. J. on Counts One & Two, ECF No. 42 ("Pl.'s Suppl. Br."), at 14, 15.)  Kretchmar also maintains that "the APA is the federal statute designed to provide review, and potentially relief, for the claims sub judice."  (*Id.* at 15.)

## II.  MOTIONS TO DISMISS UNDER RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter" to "state a claim to relief that is plausible on its face."

7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "Although 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133 (D.D.C. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). "[M]ere conclusory statements" of misconduct are not enough to make out a cause of action against a defendant, *id.*, and this is so even when the plaintiff is proceeding *pro se*, *see Moore v. Motz*, 437 F. Supp. 2d 88, 90 (D.D.C. 2006). That is, even though a court must construe liberally the pleadings of *pro se* parties, "[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. U.A.E.*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept the plaintiff's factual allegations as true and construe the complaint liberally, grant[ing] plaintiff[ ] the benefit of all inferences that can be derived from the facts alleged[.]" *Browning*, 292 F.3d at 242 (alterations in original) (internal quotation marks and citation omitted). Although the court must accept as true the facts in the complaint, it need not accept inferences a plaintiff draws if the facts set out in the complaint do not support those inferences. *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). If the alleged and liberally

8

construed facts fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted. *See, e.g.*, *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

Additionally, when deciding a Rule 12(b)(6) motion, a court may not consider matters "outside the pleadings" without converting the motion to one for summary judgment. Fed. R. Civ. P. 12(d). However, a court may consider, without triggering the conversion rule, "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint . . . or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Hinton v. Corrs. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citations and internal quotation marks omitted); *accord EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In addition, without triggering the conversion rule, a court may consider "matters of which . . . judicial notice" may be taken, *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624, such as an agency decision contained in the administrative record. *See Dist. Hosp. Partners, L.P. v. Sebelius*, No. 11cv0116, 2013 WL 5273929, at *12 n.14 (D.D.C. Sept. 19, 2013) (citation omitted); *see also Howard v. Gutierrez*, 474 F. Supp. 2d 41, 48 (D.D.C. 2007) ("Indeed, it is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice." (citation omitted)).

## III. DISCUSSION

Kretchmar's legal argument is difficult to follow, but distilled to its core, Kretchmar's claim is that Defendants should have reviewed the underlying forensic evidence that was submitted in his trial, as the CDRU Memo purportedly directed them to do, when they conducted the transcript review in his case. Kretchmar asserts that Defendants "used" the CBLA forensic work that was the subject of the trial testimony when they reviewed the transcript of the CBLA-related testimony from his trial, and he maintains that by the CDRU Memo's direction, Defendants should have proceeded to reanalyze the underlying forensic work, such that Defendants' failure to do so violated his Fifth Amendment right to due process. (Pl.'s Suppl. Br. at 15-16.) Kretchmar further argues that the Transcript Review Letter was a final agency action, and that Defendants' failure to do anything more than review the transcript of his trial proceedings renders any findings in that letter arbitrary and capricious within the meaning of the APA. (*Id.*)

As explained below, this Court concludes that Kretchmar's Fifth Amendment claim fails in the first instance because the CDRU Memo does not vest Kretchmar with a substantive liberty interest that is entitled to protection under the Due Process Clause. Furthermore, even if Kretchmar has some enforceable liberty interest related to the CDRU Memo, Defendants did not deprive Kretchmar of any process to which he was due given that, even under the most liberal construction of the facts, Defendants did not "use" the bullet-lead forensic information in Kretchmar's case file when they conducted the

transcript review. Kretchmar's APA claim fails as well because Kretchmar has not alleged any injury under the APA and thus lacks standing to bring such a claim.

    **A.    Kretchmar's Due Process Claim**

The Due Process Clause is triggered when the government deprives an individual of life, liberty, or property. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989) (citation and internal quotation marks omitted). In order to state a claim for violation of the Fifth Amendment's Due Process Clause, a plaintiff must allege that the government has deprived him of at least one of the foregoing interests without due process of law. *See Budik v. U.S.*, 949 F. Supp. 2d 14, 25 (D.D.C. 2013), *aff'd* Nos. 13-5122, 13-5123, 2013 WL 6222903 (D.C. Cir. Nov. 19, 2013). "When [as here] neither life nor property is involved, courts—speaking in a sort of shorthand—talk of the need to find a 'liberty interest' before considering what process is due under the Fifth Amendment (or the Fourteenth Amendment)." *Franklin v. D.C.*, 163 F.3d 625, 631 (D.C. Cir. 1998) (citations omitted). And a liberty interest "may arise from two sources—the Due Process Clause itself and the laws of the States." *Ky. Dep't of Corr.*, 490 U.S. at 459-60 (citation and internal quotation marks omitted).

Protected liberty interests "are not unlimited; the interest must rise to more than an abstract need or desire, and must be based on more than a unilateral hope." *Id.* at 460 (internal quotation marks and citation omitted). If a liberty interest is found, due process requires minimally that the target of the

11

deprivation receive notice and the opportunity to be heard. *See UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs. of Univ. of D.C.*, 56 F.3d 1469, 1472 (D.C. Cir. 1995). However, it is "[o]nly after finding the deprivation of a protected interest does the Court look to see if the government's procedures comport with due process." *Budik*, 949 F. Supp. 2d at 25 (internal quotation marks and alterations omitted) (quoting *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010)).

Kretchmar's theme throughout his opposition to Defendant's motion to dismiss is that he "was a party to the state court criminal action" and has an "interest in a fair and procedurally adequate [transcript review process.]" (Pl.'s Opp'n at 23.) He alleges that the due process "violation occurred when" the FBI "failed to act pursuant to the preexisting CDRU affirmative obligation or duty for a future condition that was imposed upon all FBI employees who should use the forensic work contained in [his] FBI Laboratory file [ ] in any way in the future." (*Id.* at 9 (emphasis omitted) (citing Complaint ¶¶ 19-21).) In other words, Kretchmar maintains that he has a constitutionally-protected liberty interest in having the agency reviewers follow his interpretation of the CDRU Memo's guidance in connection with the consideration of the forensic testimony presented in his case, presumably in order to preserve his ability to attack his conviction in collateral proceedings. (Pl.'s Supp. Br. at 14-15.)

Kretchmar correctly maintains that it is proper to bring this type of claim under the Due Process Clause, rather than as a petition for a writ of habeas corpus, because a decision in his favor will not "'necessarily imply' the

invalidity of his conviction." *Skinner v. Switzer*, 131 S. Ct. 1289, 1298 (2011) (quoting *Heck v. Humphrey*, 512 U.S. 447, 487 (1994)). In this regard, the Court agrees with Kretchmar and rejects Defendants' contention that he is required to bring his claim in the context of a habeas proceeding. (*See* Def.'s Suppl. Br. at 7 n.1.) Even so, Kretchmar's due process claim fails.

It is well settled that "the mere fact that the government has established certain procedures does not mean that the procedures thereby become substantive liberty interests entitled to federal constitutional protection under the Due Process Clause." *Brandon v. D.C. Bd. of Parole*, 823 F.2d 644, 648 (D.C. Cir. 1987). In *Brandon*, an inmate brought suit alleging that he had a protected liberty interest in having the Parole Board adhere to its own procedures, and that the Board deprived him of due process when it delayed his reparole hearing in contravention of these procedures. *Id.* at 646. The D.C. Circuit affirmed the trial court's grant of summary judgment in favor of the Board, finding that "[a]ppellant's claim that he has a constitutionally protected liberty interest in a reparole hearing and thus a due process right to have the Board adhere to its regulations lacks support in law or logic; indeed, it is analytically indefensible." *Id.* (internal quotation marks and citation omitted).

Kretchmar's argument is even weaker than that of the plaintiff in *Brandon* because Kretchmar cannot even allege that Defendants have violated any *mandatory* agency regulation. Instead, as the basis for his due process claim, he relies on an intra-agency memorandum, which advises what the agency "should" do before using the forensic work in a criminal defendant's case file. (Pl.'s

13

Suppl. Br. at 12; *see also id.* at 14 (referencing the 1999 CDRU Memo).) Kretchmar also points to the FBI's Press Release of November 17, 2007, which states that "some cases may require closer examination of the scientific findings and testimony by FBI experts" (*id.* at 17), but Kretchmar himself acknowledges that the release is neither "a working law document [n]or a binding norm." (*Id.* at 18.) Under *Brandon*, neither the intra-agency memorandum not the agency's statements in a press release establish a substantive liberty interest that would entitle Kretchmar to due process protection. *See Brandon*, 823 F.2d at 648.

Even assuming that Kretchmar has some substantive liberty interest in having Defendants follow the review procedures that the CDRU Memo suggests, Kretchmar has pleaded no facts showing that Defendants actually deviated from those procedures. First of all, there is no dispute that the transcript review that Kretchmar received was undertaken in order "to determine if there was a suggestion by the examiner that a bullet fragment or shot pellet was linked to a single box of ammunition without clarification." (Transcript Review Letter at 1.) This stated goal does not reference the CDRU Memo, and there is neither allegation nor evidence that the review of Kretchmar's trial testimony was undertaken pursuant to, or as a result of, that memorandum. Regardless, the CDRU Memo directs that, "[i]f the forensic work contained in this file is *used* in any way in the future, both the OIG's findings and the forensic analysis of the examiners should be reviewed." (CDRU Memo at 1 (emphasis added).) Kretchmar argues that "the forensic analysis in plaintiff's Laboratory file was used" when FBI employees reviewed Special Agent Riley's CBLA testimony

14

(Pl.'s Suppl. Br. at 14), but this Court finds that a re-reading of the trial transcript to ensure that the testimony that was given was not misleading—without something more—does not constitute "use" of the forensic analysis that would trigger the review the CDRU Memo suggests.  Kretchmar has not alleged, and the record does not establish, that the CBLA-related forensic information from Kretchmar's trial was subsequently used in later proceedings, such as if the state sought to admit that forensic analysis on retrial or on collateral review; therefore, even by its own terms, the CDRU Memo's suggested procedures were not transgressed here.

In sum, because there is no basis in law or fact for Kretchmar's due process claim, the complaint fails to state a due process claim upon which relief can be granted.  Accordingly, that claim must be dismissed.

### B.    Kretchmar's APA Claim

The APA "permits any person adversely affected or aggrieved by agency action to obtain judicial review of the lawfulness of that action." *Douglas v. Indep. Living Ctr. of So. Cal. Inc.*, 132 S. Ct. 1204, 1210 (2012) (citing 5 U.S.C. § 702). "To allege a cognizable procedural harm, plaintiffs must identify an injury that follows the violation of a procedural right, which was afforded to them by statute and designed to protect their threatened concrete interests." *St. Croix Chippewa Indians of Wis. v. Salazar*, 384 F. App'x. 7 (D.C. Cir. 2010) (per curiam) (citing *Ctr. for Law & Educ. v. Dep't. of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005)).  Here, Kretchmar rests his APA claim on the contention that the Transcript Review Letter is a reviewable final agency action and that

15

the FBI Lab Director "acted in an arbitrary and capricious manner [when issuing the Transcript Review Letter], because he knew that the [Bullet Lead Transcript Review] record did not include the mandatory review of the forensic analysis contained in [Kretchmar's] file and/or a review of the 1997 OIG Findings." (Compl. ¶ 46.) But Kretchmar has not established that he was *aggrieved* as a result of the agency's issuance of the Transcript Review Letter, not only because he has failed to establish the violation of a protected procedural right, as explained above, but also because he has not identified any actual injury arising from that correspondence.

Stated simply, although Kretchmar maintains that the Transcript Review Letter was inaccurate, he has not alleged any injury that he has suffered as a result of that alleged inaccuracy. Therefore, even if it could be said that Kretchmar had a protected procedural right to have the forensic evidence in his file reviewed, or reviewed in particular manner, "deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *see also Wilderness Soc'y v. Griles*, 824 F.2d 4, 11 (D.C. Cir. 1987) (in addressing legal standing, noting that "the Supreme Court has interpreted both § 702 [of the APA] and the Constitution as requiring plaintiffs to show that they are personally injured by the challenged action and that their injury is caused by that action" (citing cases)).

Significantly, a "defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Thus,

this Court must grant Defendants' motion to dismiss the APA claim under Rule 12(b)(1), without reaching Defendants' other equally plausible argument that the letter constituted discretionary action that is not subject to judicial review. (Defs.' Suppl. Brief at 10-12.) *See* Fed. R. Civ. P. 12(h)(3) (requiring dismissal "any time" jurisdiction over the subject matter is found wanting); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981) ("A court lacks discretion to consider the merits of a [claim] over which it is without jurisdiction[.]").

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Counts I and II of the complaint is **GRANTED**. Because Kretchmar has already agreed to the dismissal of count III, the complaint is dismissed in its entirety, as set forth in the order that accompanies this opinion.

Date:  March 27, 2014         *Ketanji Brown Jackson*
                              KETANJI BROWN JACKSON
                              United States District Judge